For the reasons assigned, the judgment appealed from is affirmed.

O'NIELL, C. J., dissents, being of the opinion that the loss claimed is not like that which was claimed in Foret's Case, or Oliver's Case, or Fabre's Case.

176 La. 694

## NEWSON v. NEWSON.
### No. 32132.

Supreme Court of Louisiana.
Jan. 30, 1933.

Rehearing Denied Feb. 27, 1933.

Robert James Newson and Edward Barnett, both of Shreveport, for appellant.

Robert Roberts, Jr., and T. M. Comegys, Jr., both of Shreveport, for appellee.

OVERTON, Justice.

On October 2, 1931, judgment was obtained by plaintiff granting him a separation from bed and board from defendant. There seems to have been but one child born of the marriage, namely, Lenore Evelyn Newson, who was born on January 2, 1927, and is now six years of age. The judgment of separation, apparently due to an understanding between the parties, awarded the custody of the child for six months to defendant and for six months to plaintiff in each year. Defendant was the first of the spouses to obtain custody of the child. When the first period allotted to her for the custody of the child was about to expire, or had just expired, she filed a rule in the district court to modify the decree so as to award to her the child's complete custody, and thereafter refused to surrender the child to plaintiff for the period allotted to him. This refusal resulted in the issuance of a rule for contempt, which reached this court, and is reported in 175 La. 202, 143 So. 49.

This rule to modify the decree, so as to award to defendant the complete custody of the child, is the matter now before us. Plaintiff has reconvened and asked that the complete custody of the child be awarded to him.

■ At the outset, it may be said that the custody of the child should be given to one of the spouses, and not alternatively to each, for it is not conducive to the welfare of a child to place it in the custody of one parent for awhile, and then in the custody of the other parent, and so to continue during the minority of the child; for such divided authority and the differences in views as to the proper way to rear a child, which are likely to result, may be expected to be deleterious to the child's welfare.

■ The law grants the custody of the child to the parent securing the separation or divorce, except where it is to the advantage of the child that the other parent be intrusted with its rearing, as appears from Act No. 74 of 1924, amending and re-enacting article 157 of the Civil Code. The act so far as pertinent, reads as follows:

"In all cases of separation and of divorce the children shall be placed under the care of the party who shall have obtained the separation or divorce unless the judge shall, for the greater advantage of the children, order that some or all of them shall be entrusted to the care of the other party. * * *"

The child is a girl, who reached her sixth birthday during the early part of the present month. The child's mother is living with her parents and an unmarried sister, all occupying the same house. The child's mother, grandparents, and aunt are devoted to it, and each gives the child attention.

The father of the child resides in his own home, which, incidentally, is mortgaged. He has leased parts of this home to two couples, with whom he has made arrangements to care for the home. In the event he is awarded the custody of the child, he testifies that an unmarried sister, living in Atlanta, Ga., in accordance with arrangements made, will come to live with him, and will take care of the child.

The father of the child has begun the practice of law, but since his practice has not yet reached a point to make it remunerative, he is holding on to a business which he had before, in order to live; namely, the retailing of coffee. The coffee business takes him away from his home, which is Shreveport, quite frequently, on which occasions he leaves early in the morning and returns at night, though sometimes earlier.

On one occasion, when the child was permitted to spend the night with its father, the father, who was required to leave home early in the morning, awoke the child before daylight and returned it in the cold to its mother, not fully clad, from which exposure it contracted the only cold it had that winter. On another occasion, when the child was visiting its father he left it, thoughtlessly, in a public library for an afternoon, while he went off with another person. On still another occasion, while the child was visiting its father, the child's aunt found the child in an office building, where its father had left it, entering a beauty shop alone.

The only reason worthy of note, aside from the fact that the father obtained the separation from bed and board, as to why the custody of the child should not be awarded to defendant, is that, on the evening of Sunday, January 10, 1931, several persons met, not by arrangement, in a cotton office in Shreveport. Among those present, excluding defendant, were two ladies; one of them with her husband. There was some gin in the office, and the occupant of the office served it to his guests. Defendant drank two, or possibly three, drinks of it. In rising from a table at which she was sitting at the time, she tripped and fell with a glass in her hand, breaking the glass and cutting her face on one of the pieces. As a result of the accident, she was taken to a hospital, where she received medical attention, and where she was advised to remain for the night; several stitches having been made in the wound. Defendant testifies positively that she was not intoxicated at the time, and the evidence of those present does not show in the slightest that she was. Defendant, it appears, is not addicted to drink.

The evidence does not reflect upon defendant's moral character, nor does plaintiff urge that it does; but defendant thinks that it is to the advantage of the child that she have the custody of it. Our brother below, for whose opinion we entertain a high regard, thought it to the advantage of the child that its complete custody be given to its mother. The child is a girl of tender years, still requiring constant attention. The father, whose business keeps him away from home during the day, cannot take, with the facilities he has at hand, as good care of the child as the mother can. The incident of January 10, 1931, in view of the fact that defendant is not addicted to drink, should have no great weight in deciding the issue. It is not unusual, in the present times, for ladies to take an occasional drink with their friends.

Sufficient reason, we think, exists for the trial judge, notwithstanding plaintiff obtained the separation, to take the view he did.

The judgment is affirmed, reserving, however, the right of the father to see his child at reasonable times, which we deem implied in the decree.

ST. PAUL, J., absent on account of illness, takes no part.