478 So.2d 937 (1985)
J.C. GILBERT, Plaintiff-Appellee,
v.
W. Carey PEARSON, Defendant-Appellant.
No. 84-843.
Court of Appeal of Louisiana, Third Circuit.
November 7, 1985.
Rehearing Denied December 10, 1985.
*938 Walter Clawson, Shreveport, for defendant-appellant.
Griffing & Johnson, George Griffing, Jonesville, Jack F. Owens, Jr., Harrisonburg, for plaintiff-appellee.
Before GUIDRY, STOKER and KING, JJ.
STOKER, Judge.
Plaintiff-appellee, J.C. Gilbert, instituted this suit on May 9, 1983 to revive two judgments he obtained against defendant-appellant, W. Carey Pearson, in 1973. Pearson reconvened to assert an action to declare the judgments null and void on the grounds that they were obtained by fraud or ill practices. The Seventh Judicial District Court for Catahoula Parish sustained Gilbert's exception of prescription as to the action of nullity and granted Gilbert's motion for summary judgment reviving the 1973 judgments. Pearson appeals.

FACTS
J.C. Gilbert filed suit against W. Carey Pearson on three promissory notes on July 26, 1972. Gilbert alleged that the indebtedness on the notes was in the amounts of $1,900.76, $1,050.42 and $16,042.75 respectively. Interest and attorney fees were also due. Pearson filed an answer and reconventional demand alleging that the third and largest note was invalid because of a lack of consideration and fraud in the transaction. He also disclaimed personal liability on all three notes, alleging that they represented the indebtedness of the Louisiana Mud and Chemical Corporation. On June 25, 1973 Pearson's attorney, Donnie Ellerman, was allowed to withdraw as counsel. A minute entry on June 28, 1973 reflects that on that date Ellerman was ordered in open court to remain as Pearson's counsel. No written order to that effect was ever issued. On that same day, June 28, a judgment was rendered in the Seventh Judicial District Court for Catahoula Parish in favor of Gilbert on the two smaller notes. Trial on the $16,042.75 note was held on November 15, 1973, and judgment again was rendered in favor of Gilbert. The formal judgments and the court minutes show that Ellerman was present in court both on June 28 and November 15 on Pearson's behalf, though the attorney's name was added in a different type on the latter judgment. The judgments were never paid.
*939 Gilbert filed a petition to revive the judgments on May 9, 1983. He alleged that Pearson was absent, so an attorney was appointed to represent him. Gilbert later learned that Pearson was in the State and had personal service made on him. In an amended answer, Pearson again alleged fraud and a lack of consideration for the largest note and that he was not liable personally on any of the notes, as they represented the indebtedness of the Louisiana Mud and Chemical Corporation. In reconvention, Pearson prayed for an annulment of the judgments. Pearson also filed a third party demand against Ellerman, his former attorney, alleging that Pearson was in Scotland at the time of the 1973 judgments, that Ellerman had promised to handle the matter, that Ellerman failed to do so, and that Ellerman's negligence left him unrepresented in the actions. In response to the reconventional demand Gilbert filed exceptions of prescription and res judicata, and a motion for summary judgment in the revival action. After a hearing, the trial court sustained the exception of prescription and granted the motion for summary judgment. The earlier judgments were thus revived. No disposition was made of the third party demand against Ellerman. Pearson has appealed suspensively from the judgment. He assigns as error the trial court's action (1) sustaining the exception of prescription and dismissing the action to annul the earlier judgments; (2) granting the summary judgment to Gilbert, which revived the 1973 judgments; and (3) accepting testimony at the hearing on the motion for summary judgment.

MOTION FOR SUMMARY JUDGMENT AND EXCEPTION OF PRESCRIPTION
Gilbert instituted this suit under LSA-C.C.P. art. 2031, which provides that "judgment shall be rendered in such proceeding reviving the original judgment, unless the defendant shows good cause why it should not be revived." Pearson claims that he has presented good cause to prevent the revival, namely, that the prior judgments are relative nullities as they were based on fraud or ill practices and therefore may be nullified under LSA-C. C.P. art. 2004. Pearson cites several cases for the proposition that a judgment which is null and void cannot be revived. We might agree; however, the two 1973 judgments have not yet been adjudged null and void. Pearson alleges that they are relative, not absolute nullities. An action to annul a judgment as an absolute nullity under LSA-C.C.P. art. 2002 may be brought at any time. The judgment cannot be revived as it is considered in law as never having been rendered. Since the action is never lost through prescription, this type of nullity may be interposed at any time as a defense to an action to revive the judgment. Texaco, Incorporated v. Finegan, 119 So.2d 646 (La.App. 2d Cir.1960); Hayden v. Slaughter, 43 La.Ann. 385, 8 So. 919 (1891); In re Board of Administrators, 37 La.Ann. 916 (1884); Theriot v. Bayard, 37 La.Ann. 689 (1885); Conery v. Rotchford, Brown & Co., 30 La.Ann. 692 (1878); Levy v. Calhoun, 34 La.Ann. 413 (1882); Folger & Son v. Slaughter, 33 La. Ann. 341 (1881); King v. Pickett, 32 La. Ann. 1006 (1880); Hammett v. Sprowl, 31 La.Ann. 325 (1879); Marbury v. Pace, 30 La.Ann. 1330 (1878); Gallagher v. Rotchford, Brown & Co., 34 La.Ann. 520 (1882); Laurent v. Beelman, 30 La.Ann. 363 (1878).
In contrast, an action to annul a judgment because it is a relative nullity must be brought within one year of the discovery by the plaintiff (in this case, plaintiff-in-reconvention). Once that action has prescribed, the party alleging the relative nullity is no longer able to raise the issue even in defense of an action to revive a judgment. The Louisiana courts have long held that in an action to revive a judgment the defendant cannot set up, in opposition to the suit for revival, relative nullities with which the original judgment was affected. Bruno v. Oviatt, 48 La.Ann. 471, 19 So. 464 (1896); McCutchen v. Askew, 34 La.Ann. 340 (1882); Folger & Son v. Slaughter, supra; Hammett v. Sprowl, supra; Drogre v. Moreau, 23 La.Ann. 173 *940 (1871); McStea v. Rotchford, Brown & Co., 29 La.Ann. 69 (1877). To allow such a defense would permit a collateral attack on the judgment. A collateral attack is defined as an attempt to impeach the decree in a proceeding not instituted for the express purpose of annulling it. Pontchartrain Park Homes, Inc. v. Sewerage and Water Board of New Orleans, 246 La. 893, 168 So.2d 595 (1964); Brigot's Heirs v. Brigot, 47 La.Ann. 1304, 17 So. 825 (1895).
"No principal of law has received greater and more frequent sanction, or is more deeply imbedded in our jurisprudence, than that which forbids a collateral attack on a judgment or order of a competent tribunal, not void on its face ab initio." Nethken v. Nethken, 307 So.2d 563, 565 (La.1975), and cases cited therein.
Regardless of the legal force and effect of a judgment which is not absolutely null, and even if it is irregularly rendered, an interested party is entitled to have it revived. The judgment of revival does not correct the defect in the original judgment, does not impart any additional force to it, and does not ratify or confirm the original judgment. Revival merely preserves the original judgment and saves it from extinction. Beall v. Succ. of Elder, 35 La.Ann. 1022 (1883); Folger & Son v. Slaughter, supra; McStea v. Rotchford, Brown & Co., supra.
Applying these principles to the case before us, if Pearson's action of nullity has prescribed, he cannot assert a relative nullity as good cause to contest the revival of the judgments rendered against him in 1973. In a revival action, the sole questions that can arise or be determined, are (1) whether such judgment was ever rendered, and (2) whether such judgment still exists or has been extinguished in any of the ways provided by law. Folger & Son v. Slaughter, supra; Conery v. Rotchford, Brown & Co., supra. This court has held that a motion for summary judgment can be based on a plea of prescription. Duhon v. Boustany, 239 So.2d 180 (La. App. 3d Cir.1970). If the court correctly sustained Gilbert's exception of prescription to Pearson's reconventional demand seeking to annul the original judgment, there is no genuine issue of material fact, and the granting of Gilbert's motion for summary judgment was appropriate. Thus, the real issue is whether or not the lower court correctly sustained the exception of prescription filed by Gilbert.
In his amended answer to the revival action, Pearson, as plaintiff-in-reconvention, prayed that the two 1973 judgments be declared null and void on the ground that they were based upon fraudulent evidence and because Pearson "was not properly represented by counsel and as a result did not enter a general appearance." We disagree with Pearson's contention that he did not make a "general appearance" as he alleges. Under LSA-C.C.P. art. 7:
Art. 7. Same; implied waiver of objections by general appearance
"A. Except as otherwise provided in this Article, a party makes a general appearance which subjects him to the jurisdiction of the court and impliedly waives all objections thereto when, either personally or through counsel, he seeks therein any relief other than:
(1) Entry or removal of the name of an attorney as counsel of record;
(2) Extension of time within which to plead;
(3) Security for costs;
(4) Dissolution of an attachment issued on the ground of the nonresidence of the defendant; or
(5) Dismissal of the action on the ground that the court has no jurisdiction over the defendant." (Emphasis supplied)
Pearson was served personally in 1973. He filed an answer which presented defenses to the promissory notes. It is clear that Pearson did make a general appearance, as that term of art is understood in the law.
Pearson's attack is not leveled at the personal jurisdiction of the lower court. Instead, his argument concerns the quality of representation at the two 1973 trials. Pearson evidently concedes that the knowledge *941 of an attorney is imputable to his client, as we held in Barber v. Testa, 331 So.2d 139 (La.App. 3d Cir.1976). Under that rule, the prescriptive period expires one year from the time the attorney of the judgment debtor discovers the fraud or ill practice. Pearson distinguishes his situation from that in Barber in that Ellerman withdrew as Pearson's counsel on June 25, 1973. Though the court ordered Ellerman to represent Pearson on June 28, Pearson claims Ellerman's appearance "was so severely tainted and suspect ... that it can have no effect whatsoever as to defendant." Additionally, it is alleged that Ellerman was not even in court on November 15, 1973. Both the judgment and the court minutes place him there, but Pearson points out that Ellerman's name appears in a different typeface than the rest of the language in the formal judgment.

THE JUDGMENT OF JUNE 28, 1973
As to the first of the earlier judgments, we reject Pearson's argument because he was represented by an attorney. Ellerman had prepared Pearson's pleadings and was familiar with the case. We do not know the reason for his withdrawal, but all parties admit that Ellerman was physically present in court on June 28, 1973. We do not believe the circumstances of his appearance can form the basis of an action of nullity. The court minutes reveal that "after hearing the pleadings, evidence and argument of counsel," the court entered judgment in favor of Gilbert on June 28, 1973. A judgment should not be annulled simply because there was a lack of diligent presentation of a valid defense. Williams v. New York Fire & Marine Insurance Co., 427 So.2d 938 (La.App. 4th Cir.1983); LeBlanc v. Estate of Blanchard, 266 So.2d 918 (La.App. 4th Cir.1972), writ refused, 263 La. 618, 268 So.2d 677 (1972). Additionally, LSA-C.C.P. art. 5098 provides:
"The failure of an attorney appointed by the court to represent an unrepresented party to perform any duty imposed upon him by, or the violation by any person of, the provisions of Articles 5092 through 5096 shall not affect the validity of any proceeding, trial, order, judgment, seizure, or judicial sale of any property in the action or proceeding, or in connection therewith."
Ill practice is construed broadly, and the above-cited cases state that a court may afford relief when the enforcement of a judgment would be unconscionable and inequitable. However, a trial court has wide discretion in determining whether a judgment should be annulled because of fraud and ill practice. Williams, supra; Muller v. Michel Lecler, Inc., 266 So.2d 916 (La.App. 4th Cir.1972). The judge in this action did not abuse his discretion in deciding that the 1973 judgments were not unconscionable and inequitable because of ill practice in the representation of Pearson by Ellerman. Pearson knew about the suit pending against him. He claimed to have placed his defense in Ellerman's hands before leaving the country. Even if Ellerman breached a duty to his client, or did not diligently represent Pearson, the trial court could have concluded that it would not be unconscionable and inequitable to enforce the judgments. As the trial judge stated in his opinion: "In the case at hand, the defendant, W. Carey Pearson, was represented by counsel at each stage of the proceedings and he was afforded due process at the hands of this Court. In this case, Defendant had an opportunity to be heard."
Pearson's principal argument is that Pearson was in essence unrepresented in the June 28, 1973 case. Pearson urges that Ellerman was not really his attorney, and therefore Ellerman's knowledge of the earlier judgments should not be imputed to Pearson. Thus, Pearson says his nullity action was not lost through prescription, as he filed suit within one year of actual discovery.
The trial judge sustained the exception of prescription. In doing so, he stated that Ellerman "was still Mr. Pearson's attorney [regardless] of whether or not he withdrew." As retained counsel or as a court-appointed attorney, Ellerman was the attorney of record of Pearson at the June 28 trial. He was in court when judgment was *942 rendered in favor of Gilbert. Therefore, Barber applies, and Ellerman's knowledge is imputable to Pearson. The trial court correctly held that the action of nullity had prescribed, and that Gilbert was entitled to a summary judgment reviving the court's action of June 28, 1973.

THE JUDGMENT OF NOVEMBER 15, 1973
The second of the judgments Gilbert seeks to revive presents different considerations. A factual issue existed as to whether Ellerman was in court on November 15, 1973. The formal judgment and the court minutes reflect that he was there. Pearson and Ellerman both claim that he was not. Ellerman's sworn statement was not admitted into evidence, but its contents were discussed by the attorneys and the judge at the trial of the exceptions. George Griffing, Gilbert's attorney, testified that he remembered Ellerman's presence in November, 1973. In its per curiam opinion, the trial judge wrote:
"On November 15, 1973, this matter came to trial on Note C. The Minutes indicate Mr. Ellerman was present at that trial, as does the judgment. It should be noted the words `Donnie L. Ellerman, Attorney at Law, representing the Defendant, W. Carey Pearson' were typed into the judgment in a different style of print. Mr. Griffing testified that on occasion he would leave a blank for the appearance by the defendant in situations where he was not sure who would appear, if anyone, on behalf of the defendant. He testified he would not have put Mr. Ellerman's name in the judgment if he did not appear. The record also reflects that Mr. Ellerman was given notice of the November 15, 1973 fixing. It shall therefore be the finding of fact of this Court that Mr. Ellerman appeared as counsel for the Defendant on the trial of June 28, 1973 and on the trial on November 15, 1973."
There was ample evidence to support this finding of fact. As we find no manifest error on the part of the trial court, we accept its conclusion. Ellerman's knowledge of the judgment is imputable to Pearson, and Pearson's action of nullity prescribed one year after the judgment was rendered. Therefore, we affirm the judge's action in sustaining the exception of prescription and granting the motion for summary judgment.

TESTIMONY AT TRIAL ON EXCEPTIONS
Pearson assigns as error the acceptance of the testimony of Gilbert's attorney, George Griffing, at the trial on motion for summary judgment. Specifically, Pearson argues that testimony may not be received at a hearing on such a motion.
The hearing held on February 16, 1984 was for the purpose of considering Gilbert's exceptions of prescription and res judicata as well as the motion for summary judgment. LSA-C.C.P. art. 931 states that:
"On the trial of the peremptory exception pleaded at or prior to the trial of the case, evidence may be introduced to support or controvert any of the objections pleaded, when the grounds thereof do not appear from the petition."
Both prescription and res judicata are raised by peremptory exception. LSA-C. C.P. art. 927. The testimony taken at the trial was admissible as to those issues. The trial judge determined that the evidence supported the exception of prescription. As we stated above, the exception of prescription served as the basis for the granting of the summary judgment. We also note that the testimony complained of was adduced as a result of Pearson's counsel calling the witness. Certainly Pearson should not be permitted to complain of his own actions in presenting testimony. We find no error in the admission of testimony at the hearing.

THIRD PARTY DEMAND
Pearson filed a third party demand against Ellerman on December 27, 1983. No action has been taken on the demand, and we do not consider it to be before us.

*943 CONCLUSION
By way of summary we conclude that the action of the trial court in sustaining the exception of prescription filed in response to reconvention which brought up the nullity of judgment issue disposed of all factual issues pertaining to the question of nullity. Evidence was admissible as to that issue. Once all the issues of material fact were disposed of on the exception of prescription, there were none with reference to the motion for summary judgment for revival of the judgments. The evidence which was heard related to the exception, not to the motion for summary judgment. Because all of Pearson's defenses fell with the sustaining of the exception of prescription, plaintiff was entitled to judgment on the basis of the motion for summary judgment.
For the reasons given above, the judgment of the trial court is affirmed. The costs of this appeal are assessed to defendant and plaintiff-in-reconvention.
AFFIRMED.